IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**WILLIAM C. TURNAGE**,

        *Plaintiff*,

*v.*

**JACKSON/HINDS LIBRARY SYSTEM,**

        *Defendant*.

CAUSE NO. 3:23-CV-338-CWR-LGI

### ORDER

Before the Court are Defendant Jackson/Hinds Library System's *Motion to Set Aside Entry of Default*, Docket No. 10, and Plaintiff William C. Turnage's *Motion to Strike Answer to Complaint*, Docket No. 16. The *Motions* are fully briefed and ready for adjudication. Upon review, the *Motion to Set Aside Entry of Default* will be granted, and the *Motion to Strike Answer to Complaint* will be denied.

**I.   Facts and Procedural History**

The original Plaintiff in this case, Judith Turnage, was at the time of filing a 70-year old white woman who had worked as Executive Secretary at the Jackson/Hinds Library System ("JHLS") from 2016 until 2022.[1] Docket No. 1.

---

[1] Mrs. Turnage was hired into this role by former JHLS Executive Director Patricia Furr, who Mrs. Turnage notes was also a white woman. Docket No. 1. Ms. Furr was terminated from her position in June 2020 and filed a lawsuit against JHLS for race and age discrimination, wrongful termination, and other claims. *Id.* Mrs. Turnage continued to work as Executive Secretary. *Id.* In March 2022, the Executive Director position was filled by Floyd Council, a Black man. *Id.* Mrs. Turnage began reporting to Mr. Council. *Id.*

In May 2022, Mrs. Turnage suffered a burst appendix and had complications from the surgery. *Id.* She took Family and Medical Leave Act ("FMLA") leave for medical treatment. *Id.* While she was on leave, JHLS Executive Director Floyd Council replaced her with a younger Black woman *Id*. Mr. Council assured her that she would be placed in an equivalent position when she returned to work. *Id.*

On September 6, 2022, when Mrs. Turnage returned to work, no equivalent position was available for her. *Id.* The next day, Human Resources Director Laura Jane Glascoff, a white woman, told Mrs. Turnage to go home until she was notified that a position was ready. *Id.* During a follow-up call with Ms. Glascoff and Mr. Council, Mrs. Turnage was told that an equivalent position would be available on September 14. *Id.* When she returned to work on September 14, though, she learned that she would be working as a "library shelver," a position she believed was "a menial manual labor" position not equivalent to her prior Executive Secretary job. *Id.*

Mrs. Turnage alleges that the decision to make her a library shelver was meant to humiliate her and exacerbate race-based discrimination and harassment she already suffered by being replaced with a "lesser qualified and significantly younger black female" employee. *Id.* Neither Mrs. Turnage's pay nor total weekly hours changed. *Id.* But her weekly schedule changed from a four-day work week to a five-day work week. *Id.*

After exhausting her administrative remedies with the EEOC, Mrs. Turnage filed her complaint in this case on May 26, 2023. *Id*. She alleged FMLA interference, FMLA

retaliation, Title VII race discrimination, 42 U.S.C. § 1981 race discrimination, and Age Discrimination in Employment Act ("ADEA") discrimination. *Id.*

After service, Defendant JHLS' answer or other response was due on July 18, 2023. Docket No. 5. July 18 passed without either an answer or a Rule 12 motion. On July 21, therefore, Mrs. Turnage moved for Clerk's entry of default. *Id.* JHLS filed its answer on July 24.[2] Docket No. 6. The next day, July 25, the Clerk of Court entered default against JHLS. Docket No. 7.

On August 4, 2023 JHLS filed the instant M*otion to Set Aside Entry of Default*. Docket No. 10. Several extensions of time were sought and granted, owing to Mrs. Turnage's death and eventual substitution of her husband as the Plaintiff in this action. *See generally* Docket. On November 17, 2023, though, her counsel responded in opposition to the *Motion to Set Aside Entry of Default* and filed the instant *Motion to Strike Answer to Complaint*. Docket Nos. 15-16. The briefing closed soon afterward.

## II.    Legal Standard

Rule 55 of the Federal Rules of Civil Procedure governs the entry of default and default judgment. When a party against whom judgment is sought "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise" the Clerk must enter default. Fed. R. Civ. P. 55(a). Rule 55 provides that the Court "may set aside an entry of default for good cause[.]" Fed. R. Civ. P. 55(c).

---

[2] July 21, 2023, was a Friday. JHLS makes note of the day to indicate that it answered one business day after Mrs. Turnage's motion. Docket No. 20 at 2. The Court, however, notes that under its electronic filing system JHLS could have filed its answer on July 22 or 23.

3

To set aside entry of default, the central question is whether the movant has shown "good cause." *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000). That question hinges on "equitable principles." *Id*. In this Circuit, courts must consider the following factors: "(1) whether the default was willful; (2) whether setting aside the default judgment would prejudice Plaintiff[]; and (3) whether [the defendant] presented a meritorious defense." *In re Chinese Manufactured Drywall Prods. Liabl. Litig.*, 742 F.3d 576, 594 (5th Cir. 2014) (citation omitted).

These factors are not exhaustive, however, as courts may also consider whether "(1) the public interest was implicated, (2) there was a significant financial loss to the defendant, and (3) the defendant acted expeditiously to correct the default." *Matter of Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992) (citations omitted). "A finding of willful default ends the inquiry, for 'when the court finds an intentional failure of responsive pleadings there need be no other finding.'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 500 (5th Cir. 2015) (citation omitted).

Default judgments "are not favored and their strict enforcement has no place in the Federal Rules." *Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 563 (5th Cir. 2003). Similarly, "entries of default are serious," and "any doubt should be resolved in favor of the movant to the end of securing a trial upon the merits." *Id.* Without a showing of actual prejudice as a result of the delay, entry of default is not justified. *See Mason & Hanger-Silas Mason Co. v. Metal Trades Council of Amarillo, Tex. & Vicinity, AFL-CIO*, 726 F.2d 166, 168 (5th Cir. 1984).

Rule 12(f) of the Federal Rules of Civil Procedure empowers the Court to "strike . . . an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Striking a pleading is "a drastic remedy" that "should be used sparingly" and "only when required for the purposes of justice." *Augustus v. Bd. Of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962).

### III. Discussion

The Court begins with the parties' most-emphasized arguments. JHLS argues that the Clerk's entry of default was inappropriate because it had already answered the complaint the day before. Docket No. 11. Mr. Turnage, meanwhile, argues that JHLS's answer was ineffective because "answers filed outside of time do not cure a default." Docket No. 18 at 5. Both parties rely upon strict readings of different Federal Rules of Civil Procedure and a handful of unreported district court cases.

Although there is a kernel of truth and authority in each side's arguments, the Court does not find either wholly persuasive. Instead, it will hew to the Fifth Circuit precedent recited above, and consider the traditional factors governing whether entries of default should be set aside.

#### A. Whether The Default Was Willful

Mr. Turnage argues that JHLS has neither shown that the default was not willful, nor provided an explanation for why it did not answer on time or seek an extension. Docket No. 18 at 7-8.

The Fifth Circuit defines willfulness as an "intentional failure to respond to litigation." *In re OCA, Inc.*, 551 F.3d 359, 374 n.32 (5th Cir. 2008). And JHLS does state in

5

various places that "the Default was not willful," Docket No. 11, and was "unintentional," Docket No. 20 at 2.

Ultimately, JHLS' answer was only six days late; it was filed only one business day after Mr. Turnage's *Motion for Entry of Default*. JHLS answered and shortly thereafter had two new attorneys entered their appearances. Docket Nos. 8-9. They promptly filed the *Motion to Set Aside Entry of Default*. Docket No. 10. On this record, the Court cannot conclude that the late answer was willful.

### B. Whether Setting Aside The Entry of Default Would Prejudice Plaintiff

Mr. Turnage asserts that setting aside the default would "prejudice the Plaintiff because failing to timely file a Complaint with claims that are time-barred are generally subject to dismissal with prejudice." Docket No. 18 at 6. He wants the Court to hold the defendant "to the same standard." *Id.*

This argument is not persuasive. The Court obviously has deadlines. Certain claims can be time-barred. But the deadline to answer is not the same as a statute of limitations. Precedent in this Circuit indicates that entries of default are serious and disfavored. And Mr. Turnage has not shown any *actual* prejudice suffered as a result of the six-day delay. *See Mason & Hanger-Silas Mason Co. v. Metal Trades Council of Amarillo, Tex. & Vicinity, AFL-CIO*, 726 F.2d 166, 168 (5th Cir. 1984).

### C. Whether Defendant Presented A Meritorious Defense

As neither party addressed whether JHLS presented a meritorious defense, the Court declines to consider the factor.

6

### D. Other Relevant Factors

The only other factor relevant in this case is whether the defaulting party "acted expeditiously to correct the default." *Dierschke*, 975 F.2d at 184. JHLS did, in fact, act expeditiously to fix its mistake. JHLS's new attorneys promptly filed its *Motion to Set Aside Entry of Default* the same day they entered their appearances. This too favors relief.

### E. Analysis of the Factors

Based on these factors, good cause exists to set aside the Clerk's entry of default. Although JHLS made an error, the Court cannot say it was a willful error, JHLS acted promptly to fix it, and the resulting six-day delay did not prejudice its opponent.

### F. Motion to Strike Answer

To the extent the above does not render the remaining *Motion* moot, the Court declines to strike JHLS' answer. The device is supposed to be used sparingly, and it is not favored in these circumstances. *See Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). The parties should proceed to litigate the merits.

## IV. Conclusion

The *Motion to Set Aside Entry of Default* is granted. The *Motion to Strike the Answer to Complaint* is denied. The parties are directed to contact the chambers of the Magistrate Judge within 7 days to schedule the Case Management Conference.

**SO ORDERED**, this the 4th day of March, 2024.

                                                s/ Carlton W. Reeves
                                                UNITED STATES DISTRICT JUDGE